**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

GAMALAT MANSOUR,                    )    No.  ED CV 07-851-PLA
                                    )
                  Plaintiff,        )
                                    )    **MEMORANDUM OPINION AND ORDER**
          v.                        )
                                    )
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF SOCIAL              )
SECURITY ADMINISTRATION,            )
                                    )
                  Defendants.       )
_____)

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 18, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income.  The parties filed Consents to proceed before the undersigned Magistrate Judge on July 31, 2007, and August 6, 2007.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 28, 2008, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 13, 1964. [Administrative Record ("AR") at 32, 82, 84.] She obtained a high school diploma in Egypt [AR at 35-36, 292], and has past relevant work experience as a secretary and a security guard. [AR at 90, 451-52.]

On November 20, 2000, plaintiff protectively filed her application for Supplemental Security Income payments,[1] alleging that she has been unable to work since September 1, 2000,[2] due to diabetes, high blood pressure, stress, shortness of breath, a "disabled" right hand, and swollen feet. [AR at 82-84, 89, 278-81.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 57-70.] A hearing was held on April 10, 2002, at which time plaintiff appeared with counsel and testified, through an interpreter, on her own behalf. [AR at 22-56.] A vocational expert and a medical expert also testified. [AR at 27-32, 50-55.] On April 23, 2002, the ALJ determined that plaintiff was not disabled. [AR at 8-18.]

Plaintiff requested review of the ALJ's April 23, 2002, decision. [AR at 7, 19.] On November 27, 2002, the Appeals Council denied review [AR at 4-5], and plaintiff filed an action in District Court, in Case No. ED CV 03-22-PLA, challenging the Commissioner's decision.[3] On

_____

[1]    Plaintiff filed an interim application for Supplemental Security Income payments on January 27, 2003, which was denied initially and on reconsideration. [AR at 235, 264, 266, 268-77.] The January 27, 2003, application was associated with the November 20, 2000, application. [AR at 235, 256.]

[2]    In her initial application for Supplemental Security Income payments, plaintiff alleged that she has been unable to work since September 1, 2000. [AR at 82.] In the Adult Disability Report, plaintiff indicated that she became unable to work on June 10, 2000. [AR at 89.] However, at the hearing on April 10, 2002, the parties stipulated to an amended onset date of December 28, 2000, which is the date that plaintiff's initial application was file stamped by the Social Security Administration. [AR at 32-33, 82.]

[3]    On June 4, 2003, the parties stipulated to voluntary remand of the case pursuant to sentence six of 42 U.S.C. § 405(g), because the Commissioner was unable to locate the file and the cassette tape of the April 10, 2002, hearing, and thus was unable to prepare a certified record. [AR at 234.] The Court remanded the case for further administrative proceedings. See Stipulation and Order of Remand in Case No. ED CV 03-22-PLA, entered June 6, 2003.  Thereafter, the

1    June 7, 2006, judgment was entered remanding the case for further proceedings pursuant to the

2    parties' stipulation under sentence four of 42 U.S.C. § 405(g).  [AR at 258-62.]  On September 6,

3    2006, the Appeals Council vacated the ALJ's decision of April 23, 2002, and remanded the case

4    for further proceedings.  [AR at 256-57.]  The Appeals Council instructed the ALJ on remand to

5    (1) update the record and reevaluate all of plaintiff's impairments; (2) evaluate plaintiff's mental

6    impairment under 20 C.F.R. §§ 404.1520a and 416.920a; (3) consider plaintiff's earnings after her

7    alleged onset date and make a determination as to whether they constituted substantial gainful

8    activity; and (4) associate the claim for Title XVI benefits filed on January 27, 2003, with the

9    November 20, 2000, claim, and issue a new decision on the associated claims.  [AR at 256.]  A

10   new hearing was held before a different ALJ on March 2, 2007, at which time plaintiff appeared

11   with counsel and testified, through an interpreter, on her own behalf.  [AR at 446-56.]  Plaintiff's

12   daughter also testified.  [AR at 453-55.]  On April 11, 2007, the ALJ determined that plaintiff was

13   not disabled.  [AR at 231-42.]  This action followed.

14

15                                                    III.

16                                   **STANDARD OF REVIEW**

17        Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

18   decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

19   evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

20   60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

21        In this context, the term "substantial evidence" means "more than a mere scintilla but less

22   than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

23   adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

24   1257.  When determining whether substantial evidence exists to support the Commissioner's

25   decision, the Court examines the administrative record as a whole, considering adverse as well

26   _____

27   parties filed a stipulation to reopen the case, and on January 3, 2006, the Court ordered the case
     reopened.  See Stipulation to Reopen Case in Case No. ED CV 03-22-PLA, entered December
28   16, 2005; see also Order Reopening Case, entered January 9, 2006.

                                                    3

as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.      THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

1   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

2   perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

3   prima facie case of disability is established.  The Commissioner then bears the burden of

4   establishing that the claimant is not disabled, because she can perform other substantial gainful

5   work available in the national economy.  The determination of this issue comprises the fifth and

6   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

7   n.5; Drouin, 966 F.2d at 1257.

8

9   **B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

10          In this case, at step one, the ALJ found that plaintiff "has engaged in substantial gainful

11  activity since September 1, 2000, the alleged onset date [of the disability]."[4]  [AR at 237.]  At step

12  two, the ALJ concluded that plaintiff "has a severe impairment of the musculoskeletal system,

13  obesity, and diabetes mellitus."  [Id.]  The ALJ also concluded that plaintiff has a depressive

14  disorder, which is considered non-severe as it has no more than a minimal effect on plaintiff's

15  ability to engage in work-related activities.  [AR at 237.]  At step three, the ALJ determined that

16  plaintiff's impairments do not meet or equal any of the impairments in the Listing.  [Id.]  The ALJ

17  further found that plaintiff retained the residual functional capacity ("RFC")[5] to perform a full range

18  of medium exertion.[6]  [AR at 237.] Specifically, the ALJ determined that plaintiff can lift and carry

19  50 pounds occasionally and 25 pounds frequently, can stand or walk for 6 hours out of an eight-

20

21  _____

22      4    According to plaintiff's testimony and earnings record, the ALJ noted that plaintiff
23  "engaged in substantial gainful activity as a security guard in 2004, 2005, and 2006, stopping only
    in August 2006 when she alleges she hurt her back on the job."  [AR at 237.]  The ALJ further
24  noted that plaintiff "is now drawing state disability insurance of $275 every 2 weeks."  [Id.]

25      5    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
    Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
27      6    Medium work is defined as work involving "lifting no more than 50 pounds at a time with
    frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c),
    416.967(c).  If a plaintiff is able to perform medium work, he or she is also deemed able to perform
28  sedentary and light work.  See id.

1  hour day, and can sit for 6 hours out of an eight-hour day.[7]  [AR at 237.]  At step four, the ALJ

2  concluded that plaintiff is capable of performing her past relevant work as a security guard.  [AR

3  at 242.]  Despite the ALJ's step four determination, he proceeded to step five in the process.  [Id.]

4  At step five, the ALJ found, based on the application of Medical-Vocational Rule 203.28 as a

5  framework, that "[w]ork exists in significant numbers in the national economy [that] the claimant

6  is capable of performing consistent with her vocational factors and residual functional capacity."

7  [AR at 242.]  Accordingly, the ALJ determined that plaintiff is not disabled.[8]  [Id.]

8

9                                                    **V.**

10                                       **THE ALJ'S DECISION**

11         Plaintiff contends that the ALJ failed to: (1) comply with the orders of the District Court and

12  the Appeals Council that required the ALJ to properly consider plaintiff's mental impairment; (2)

13  properly develop the record with regard to the opinion of plaintiff's treating physician; (3) properly

14  develop the record regarding the Culver Family and Urgent Care Medical Center's "Certificate to

15  Return to Work or School" dated December 28, 2002; and (4) properly consider the mental and

16  physical demands of plaintiff's past relevant work.  Joint Stipulation ("Joint Stip.") at 2-3.  As set

17  forth below, the Court agrees with plaintiff in part, and remands the matter for further proceedings.

18

19  **TREATING PHYSICIAN'S OPINION**

20         In evaluating medical opinions, the case law and regulations distinguish among the opinions

21  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

22  examine but do not treat the claimant (examining physicians); and (3) those who neither examine

23  nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also

24  _____

25         [7]  The ALJ also found that plaintiff "has no severe functional limitations due to a mental

26  impairment."  [AR at 237.]

27         [8]  The ALJ determined that plaintiff "has not been under a disability, as defined in the
    Social Security Act, since November 20, 2000, the date the application was filed."  [AR at 242

28  (citation omitted).]

1  Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater

2  weight than those of other physicians, because treating physicians are employed to cure and

3  therefore have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80

4  F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing

5  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's

6  opinion is entitled to great deference, it is not necessarily conclusive as to the question of

7  disability.  Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

8         Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear

9  and convincing" reasons.  Lester, 81 F.3d at 830.  Where the treating physician's opinion is

10  contradicted by another physician, the ALJ may only reject the opinion of the treating physician

11  if the ALJ provides specific and legitimate reasons for doing so that are based on substantial

12  evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d),

13  416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice

14  of determination or decision for the weight [given to the] treating source's opinion"); Social Security

15  Ruling[9] 96-2p ("the notice of the determination or decision must contain specific reasons for the

16  weight given to the treating source's medical opinion, supported by the evidence in the case

17  record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

18  adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

19         An examining physician's opinion based on independent clinical findings that differ from the

20  findings of a treating physician may constitute substantial evidence.  Orn v. Astrue, 495 F.3d 625,

21  632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from

22  those offered by another physician and that are supported by substantial evidence, (citation

23  omitted) or (2) findings based on objective medical tests that the treating physician has not herself

24  considered." (citation omitted)).  However, even if an examining physician's opinion constitutes

25

26        [9]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27  "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28  the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    substantial evidence, the treating physician's opinion is still entitled to deference.[10]  See id.; see

2    also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight

3    does not mean that the opinion is rejected).

4           Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial

5    evidence that justifies the rejection of the opinion of either an examining physician *or* a treating

6    physician."  Lester, 81 F.3d at 831 (emphasis in original).  The opinion of a non-examining

7    physician may serve as substantial evidence when it is consistent with other independent evidence

8    in the record.  Id. at 830-31.  "A report of a non-examining, non-treating physician should be

9    discounted and is not substantial evidence when contradicted by all other evidence in the record."

10   See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725

11   F.2d 243, 245 (4th Cir. 1984)).

12          Plaintiff argues that the ALJ failed to properly consider the opinion of plaintiff's treating

13   physician, Dr. Adel Samaan.  Specifically, plaintiff asserts that the ALJ did not sufficiently develop

14   the record with respect to Dr. Samaan's opinion.[11]  Joint Stip. at 3-4.  As discussed below, the

15   Court agrees with plaintiff.

16          Dr. Samaan treated plaintiff from September 24, 2004, to January 26, 2007. [AR at 436-38,

17   440-43, 445.]  On September 28, 2006, Dr. Samaan completed a "Medical Opinion Re: Ability to

18   Do Work-Related Activities (Physical)" (the "Medical Opinion form") concerning plaintiff's ability

19   to do work-related activities on a day-to-day basis in a regular work setting.  [AR at 436-38.]  In

20

21          [10]  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and
22   should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p.  In
     determining what weight to accord the opinion of the treating physician, the ALJ is instructed to
23   consider the following factors: length of the treatment relationship and frequency of examination;
     nature and extent of the treatment relationship; the degree to which the opinion is supported by
24   relevant medical evidence; consistency of the opinion with the record as a whole; specialization;
     and any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-
25   (6), 416.927(d)(2)-(6).

26          [11]  In light of defendant's argument that the ALJ provided specific and legitimate reasons
27   for rejecting the opinion of Dr. Samaan, and thus properly developed the record (Joint Stip. 8-9),
     the Court will address the sufficiency of each reason provided by the ALJ for rejecting Dr.
28   Samaan's opinion, as well as whether the ALJ properly developed the record.

the Medical Opinion form, Dr. Samaan indicated that plaintiff has the following limitations:  (1) she can lift and carry 50 pounds on an occasional basis; (2) she can lift and carry 25 pounds on a frequent basis; (3) she can stand and walk (with normal breaks) for about four hours during an eight-hour day; and (4) she can sit (with normal breaks) for less than two hours during an eight-hour day.  [AR at 436.]  Dr. Samaan also indicated that plaintiff can sit for thirty minutes before changing position, stand for twenty minutes before changing position, and must walk every five minutes for a duration of five minutes.  [AR at 437.]  Dr. Samaan noted that plaintiff needs the opportunity to shift at will from sitting or standing/walking, and needs to lie down at unpredictable intervals during a work shift.  [Id.]  Dr. Samaan indicated that plaintiff's lower back pain syndrome and a physical examination showing a severe spasm support the exertional limitations referenced above.  [AR at 437.]

As for the performance of certain postural activities, Dr. Samaan found that plaintiff can occasionally crouch,[12] but can never stoop (bend) or climb ladders.  [AR at 437.]  With respect to the performance of certain physical functions, Dr. Samaan opined that plaintiff's ability to push and pull is affected by her impairments.  [AR at 438.]  Dr. Samaan further opined that the physical functions of reaching (including overhead) and handling (gross manipulation) are affected by plaintiff's impairments.  [Id.]  In support of the physical functional limitations, Dr. Samaan noted the following medical findings: diabetic neuropathy, lower back pain syndrome, and sciatica (right side).  [Id.]  As for environmental restrictions, Dr. Samaan determined that plaintiff needs to avoid concentrated exposure to wetness and humidity, and all exposure to extreme cold, noise, fumes, odors, dusts, gases, poor ventilation, and hazards (machinery, heights, etc.).  [Id.]  Dr. Samaan again noted diabetic neuropathy, sciatica, and lower back pain syndrome as supportive of the environmental restrictions.  [AR at 438.]  Furthermore, Dr. Samaan concluded that plaintiff is likely to be absent from work more than three times a month as a result of her impairments or treatment.  [Id.]

---

[12]   The Court notes that Dr. Samaan checked both the boxes labeled "occasionally" and "never" concerning plaintiff's ability to crouch.  [AR at 437.]  However, this discrepancy with respect to plaintiff's ability to crouch has no material impact on the Court's analysis herein.

1    In 2006, Dr. Samaan completed a "Physician's Supplementary Certificate" in which he

2    diagnosed plaintiff with lower back pain syndrome (724.2) and diabetes with neurological

3    manifestations (250.6), as well as depressive disorder, not otherwise specified (311), and panic

4    disorder without agoraphobia (300.01).[13]   [AR at 441.]   In describing how plaintiff's present

5    condition or impairment prevents her from returning to regular and customary work, Dr. Samaan

6    noted that plaintiff's sciatica is "not yet well healed" and her diabetic neuropathy is "uncontrolled."

7    [Id.]

8    In rejecting the opinion of Dr. Samaan, the ALJ concluded that (1) there were no clinical or

9    laboratory findings that supported Dr. Samaan's opinion, and the check-the-box form completed

10   by Dr. Samaan was conclusory; (2) Dr. Samaan's physical functional capacity assessment was

11   rebutted by the findings in the internal medicine consultative examination of December 27, 2006;

12   and (3) Dr. Samaan's treatment notes were illegible.  [AR at 23-24.]

13   First, the ALJ's finding that Dr. Samaan's opinion was not entitled to significant weight

14   because it was unsupported by objective clinical and laboratory findings, and was in a conclusory

15   "check-the-box" format, is inaccurate, and thus is inadequate to constitute a specific and legitimate

16   reason for rejecting Dr. Samaan's opinion.  [AR at 239.]  An ALJ may properly reject a treating

17   physician's opinion that is conclusory and unsupported by medical findings.  See Batson v.

18   Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding

19   that the ALJ did not err in giving minimal evidentiary weight to the opinion of the claimant's treating

20   physician where the opinion was in the form of a checklist, did not have supportive objective

21   evidence, was contradicted by other statements and assessments of the claimant's medical

22   condition, and was based on the claimant's subjective descriptions of pain); see also Crane v.

23   Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected psychological evaluations

24

25

26       [13]   The current official diagnostic coding system in the United States is the *International
         Classification of Diseases, Ninth Revision, Clinical Modification* ("ICD-9-CM").  See American
27       Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 1 (4th Ed. 2000).
         Diagnoses and procedures in the United States are assigned numerical codes, which are listed
28       in the ICD-9-CM.

1  because they were check-the-box reports that did not contain explanations of the bases of their

2  conclusions).

3         Although the Medical Opinion form completed by Dr. Samaan did contain many check-the-

4  box type questions, it also required Dr. Samaan to provide support for those conclusions by citing

5  medical findings.  Dr. Samaan did just that by noting specific medical findings in support of his

6  opinion.  [AR at 437-38.]  Further, despite the ALJ's conclusion that "there is no supporting

7  evidence in the file corroborating [Dr. Samaan's] opinion" [AR at 239], both Dr. Samaan's check-

8  the-box and annotated responses are consistent with other medical evidence in the record.

9  Indeed, the record contains clinic progress notes indicating that plaintiff suffers from chronic low

10  back pain, sciatica, feet pain, diabetes mellitus, hyperlipidemia, hypertension, and right hand

11  numbness.  [AR at 149, 152, 157, 347, 372.]  Moreover, Dr. Samaan's treatment notes support

12  the medical findings noted by him in the Medical Opinion form, i.e., that plaintiff suffers from lower

13  back pain syndrome, sciatica (right side), a severe spasm, and diabetic neuropathy.[14]  [AR at 440,

14  445.]  Dr. Samaan treated plaintiff for over two years, conducted examinations of plaintiff, and

15  prescribed medications as evidenced by Dr. Samaan's treatment notes contained in the medical

16  record.  [AR at 440-43, 445.]  See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight

17  accorded to a treating physician's opinion dependent on length of the treatment relationship,

18  frequency of visits, and nature and extent of treatment received).  Based on the length of the

19  treatment and Dr. Samaan's experience with plaintiff, Dr. Samaan had the broadest range of

20  knowledge regarding plaintiff's medical condition, which is supported by the record.  See Smolen,

21  80 F.3d at 1279; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (treating physicians "are

22

23  _____

24         [14]  Although the ALJ contends that Dr. Samaan's "treatment notes are illegible" (see
   discussion, infra, pp. 13-15), the Court finds that the ALJ's conclusion is not entirely accurate, as

25  Dr. Samaan's handwriting in the treatment notes is partially legible, albeit difficult to decipher.  [AR
   at 440, 445.]  Moreover, the ALJ contends that "[t]he problem with Dr. Samaan's opinion, and with

26  check-box opinions in general, is that they do not contain any objective evidence, be it in the
   form of clinical studies or treatment notes, to substantiate the sparse responses contained in the

27  form."  [AR at 239.]  The ALJ's contention lacks merit as certain clinic progress notes in the record
   and Dr. Samaan's treatment notes lend support to Dr. Samaan's findings in the Medical Opinion

28  form.

1    likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the

2    claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence

3    that cannot be obtained from the objective medical findings alone or from reports of individual

4    examinations, such as consultative examinations or brief hospitalizations."); Lester, 81 F.3d at 833

5    ("The treating physician's continuing relationship with the claimant makes him especially qualified

6    . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe

7    or approve the overall course of treatment.").  Given that plaintiff's medical records, including Dr.

8    Samaan's treatment notes, reveal treatment for, among other things, lower back pain and sciatica,

9    the ALJ's rejection of Dr. Samaan's opinion as lacking supporting evidence itself lacks

10   substantiation.

11        Next, the ALJ's finding that Dr. Samaan's physical functional capacity assessment was

12   rebutted by internal medicine consultative evaluator Dr. Nicholas N. Lin's assessment is

13   insufficient to constitute a specific and legitimate reason for rejection of Dr. Samaan's opinion. [AR

14   at 239, 415-20.]  Generally, more weight is given to the opinions of treating physicians.  See 20

15   C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ may only give less weight to a treating

16   physician's opinion that conflicts with that of another physician if the ALJ provides sufficient

17   specific and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830; see also

18   Orn, 495 F.3d at 632-33.  Here, the ALJ merely asserts that Dr. Samaan's "extremely restrictive

19   physical functional capacity assessment is rebutted by other evidence in the record, including the

20   detailed consultative examination conducted December 27, 2006 by Dr. Lin." [AR at 239.]  This

21   vague assertion by the ALJ does not reach the level of specificity required in order to reject the

22   opinion of a treating physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To

23   say that medical opinions are not supported by sufficient objective findings or are contrary to the

24   preponderant conclusions mandated by the objective findings does not achieve the level of

25   specificity our prior cases have required, even when the objective factors are listed seriatim.  The

26   ALJ must do more than offer his conclusions.  He must set forth his own interpretations and

27   explain why they, rather than the [treating] doctors', are correct." (footnote omitted)); see also

28   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ rejecting the treating

physician's opinion on the grounds that it was contrary to clinical findings in the record, was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"). Although the ALJ indicates that Dr. Samaan's assessment is "rebutted" by "other evidence in the record," including Dr. Lin's assessment, he does not provide any explanation for his conclusion and fails to sufficiently specify exactly how Dr. Samaan's assessment was flawed in comparison to the other evidence and the assessment of Dr. Lin.  As such, the ALJ's assertion is insufficient to support his rejection of Dr. Samaan's opinion.

   Finally, the ALJ's finding that Dr. Samaan's treatment notes were illegible, and thus "virtually worthless," considered in combination with his conclusion that Dr. Samaan's opinion was unsupported by any medical findings, should have triggered the ALJ's duty to seek further development of the record to determine the basis of Dr. Samaan's findings.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288); see also Cutler v. Weinberger, 516 F.2d 1282, 1285 (2nd Cir. 1975) ("Where the medical records are crucial to the claimant's claim, illegibility of important evidentiary material has been held to warrant a remand for further clarification and supplementation."); Miller v. Heckler, 756 F.2d 679, 680-81 (8th Cir. 1985) (finding that the ALJ failed to develop evidence from the claimant's treating source where the record contained handwritten entries that were in large part illegible); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").  In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. See Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel); see also Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981) (recognizing the need for full and detailed findings of facts essential to the ALJ's

1    conclusion).  If evidence from the medical source is inadequate to determine if the claimant is

2    disabled, an ALJ is required to recontact the medical source to determine if additional needed

3    information is readily available.  See SSR 96-5p (because treating source evidence is important,

4    when a treating opinion is ambiguous, inconsistent, incomplete, or appears not to be based on

5    objective findings, the ALJ must make "'every reasonable effort'" to recontact the treating medical

6    source for clarification); see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ

7    is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the ALJ to

8    make a disability determination.") (citation omitted).  The responsibility to see that this duty is

9    fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden.[15]  White v. Barnhart, 287

10   F.3d 903, 908 (10th Cir. 2001).

11          Here, the record was not sufficiently developed to reject Dr. Samaan's opinion to the extent

12   the ALJ believed that the treatment notes were undecipherable, did not contain all the necessary

13   information, or did not appear to be based on medically acceptable clinical and laboratory

14   diagnostic techniques.[16]   For instance, in light of the ALJ's expressed skepticism toward the

15   opinion of Dr. Samaan as being "illegible" and unsupported by objective evidence, it would have

16   required little effort on his part to recontact the treating physician to determine the basis of his

17   opinion.  See Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the

18   treating physician's opinion] in order to evaluate [it], he had a duty to conduct an appropriate

19   inquiry.").  The ALJ should recontact Dr. Samaan on remand in order to resolve any perceived

20

21

22

---

23        [15]   "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's
     physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping
24   the record open after the hearing to allow supplementation of the record."  Tonapetyan, 242 F.3d
     at 1150.
25

26        [16]   The ALJ's inability to decipher Dr. Samaan's treatment notes calls into question whether
     the ALJ properly evaluated the evidence given his conclusion that there was no evidence in the
27   file to support Dr. Samaan's opinion in the Medical Opinion form.  As discussed above, Dr.
     Samaan's treatment notes are partially legible and lend support to Dr. Samaan's findings in the
28   Medical Opinion form.

1  inadequacies and fully develop the record.[17]  See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4)

2  (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the

3  ALJ should resolve the inconsistency by recontacting the medical source).

4        Accordingly, the ALJ erred by not giving any specific and legitimate reasons supported by

5  substantial evidence in the record for rejecting Dr. Samaan's opinion, and by failing to fully develop

6  the record.[18]  As such, remand is warranted.[19]

7  /

8  /

9  /

10  /

11  /

12  _____

13  [17]  Plaintiff further contends in the Joint Stipulation that the ALJ failed to properly develop
14  the record with respect to the "Certificate to Return to Work or School" dated December 28, 2002,
   from Culver Family and Urgent Care Medical Center (the "Certificate"). [AR at 372.]  Joint Stip.
15  at 10-11.  The ALJ discounted the opinion in the Certificate because the signature was illegible,
   there were no treatment records from Culver Family and Urgent Care Medical Center supporting
16  the opinion in the Certificate, and there was no evidence that plaintiff had heart disease,
   neuropathy, or a panic disorder as noted in the Certificate.  [AR at 241.]  Although the only
17  evidence in the record from Culver Family and Urgent Care Medical Center is the Certificate
   indicating that plaintiff is "totally disabled" due to hypertension, heart disease, diabetes mellitus,
18  neuropathy, "panic," and depression [AR at 372], and the ALJ need not accept a treating
   physician's opinion that is "'brief and conclusionary in form. . .'" (Magallanes, 881 F.2d at 751
19  (citation omitted)), the ALJ on remand should make efforts to: (1) ascertain the identity of the
   medical source in the Certificate, and (2) obtain additional records from Culver Family and Urgent
20  Care Medical Center, if any.

21

22  [18]  Plaintiff also contends that the ALJ failed to comply with the orders of the District Court
   and the Appeals Council that required the ALJ to properly consider plaintiff's mental impairment.
23  [AR at 256-59.]  Joint Stip. at 3-4.  Specifically, plaintiff asserts that the ALJ did not make any
   findings rating the episodes of decompensation and the degree of functional limitations in the
24  following areas: activities of daily living; social functioning; and concentration, persistence, or pace.
   Joint Stip. at 4.  Remand is not warranted on this issue.  The Court finds that the ALJ in the
25  decision properly evaluated plaintiff's mental impairment under 20 C.F.R. §§ 404.1520a and
26  416.920a.  [AR at 237.]

27  [19]  As the ALJ's consideration on remand of Dr. Samaan's opinion may impact on the other
   issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address
28  those issues in this Order.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider Dr. Samaan's opinion and fully develop the record.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: February 2, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE